IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TMIRS ENTERPRISES, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-09-2858 |
| | § | |
| GODADDY.COM, INC., THE PLANET. | § | |
| COM INTERNET SERVICES, INC., | § | |
| KOWABUNGA! INC., MATT CONNELLY | § | |
| d/b/a PROVEN SOLUTIONS GROUP, | § | |
| and JOHN DOES 1-5, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced action, removed by Defendant The Planet.com Internet Services, Inc.[1] from the 270th Judicial District Court, Harris County, Texas on diversity jurisdiction, is a motion to dismiss (instrument #21) filed by Defendant Inuvo, Inc., f/k/a Kowabunga!, Inc. ("Inuvo"), under Federal Rule of Civil Procedure 12(b)(6).

## Standard of Review under Rule 12(b)(6)

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Kane Enterprises v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir.

---

[1] Since the removal Defendants The Planet.com Internet Services and GoDaddy.com Inc. ("GoDaddy") have been dismissed with prejudice (#9).

2003), *citing Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough

facts to state a claim to relief that is plausible on its face.'"),
*citing Twombly*, 127 S. Ct. at 1974).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009)(5-4), the
Supreme Court, applying the *Twombly* plausibility standard to a
*Bivens* claim of unconstitutional discrimination and a defense of
qualified immunity for government official, observed that two
principles inform the *Twombly* opinion: (1) "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions." . . . Rule 8 "does not
unlock the doors of discovery for a plaintiff armed with nothing
more than conclusions."; and (2) "only a complaint that states a
plausible claim for relief survives a motion to dismiss," a
determination involving "a context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense."

Furthermore, the plaintiff must plead specific facts, not
merely conclusory allegations, to avoid dismissal. *Collins v.
Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)
"Dismissal is proper if the complaint lacks an allegation regarding
a required element necessary to obtain relief . . . ." *Rios v.
City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert.
denied*, 549 U.S. 825 (2006).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is
"appropriate when a defendant attacks the complaint because it

fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

*Twombly* and the heightened pleading standards of Rule 9(b) apply to pleading a state-law claim of conspiracy to commit fraud. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)("a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy'"), *quoting FC Inv. Group LLC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies

before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its fact . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

There is no dispute that Texas law applies to the causes of action asserted here.

### Factual Allegations

Plaintiff TMIRS Enterprises, Ltd. d/b/a Tax Masters ("Tax Masters"), in its Original Petition (attached to Notice of Removal, #1) states that its business is to assist individuals with Internal Revenue Service disputes.  In June 2008, Tax Masters discovered that Defendant Doe 1 had created a website with the domain name www.www-taxmasters.com, registered by an entity named Proven Solutions Group through Defendant GoDaddy, which published in Harris County, Texas and other parts of the United States a list of alleged "former" customers' complaints about Tax Masters and

referred business to other competitors' websites that claimed to offer tax resolution services.  Tax Masters asserts generally that the fictional list was false and defamatory and that Tax Masters lost business as a result.

Furthermore Tax Masters charges that Defendant Doe 2 created another website with a domain name www.taxmastersreviews.com registered by Domains by Proxy, Inc. through its owner Defendant GoDaddy, which also published in Harris County, Texas and in other parts of the United States false and malicious allegations against Plaintiff.

The petition further alleges that Defendant Inuvo, which engages in Internet marketing and contracts to create websites designed to draw leads for its clients, formed a business relationship with Defendant Does to enable Doe Defendants' websites to siphon off leads to Tax Masters and redirect them to Inuvo's clients, the Does.  It also alleges that the Doe Defendants have registered their domain names through Domain by Proxy, which is owned by GoDaddy, to hide their true identities and avoid liability.

Tax Masters charges the Doe Defendants with business disparagement, defamation, trade name infringement, tortious interference with prospective contracts and conspiracy.  It alleges against the named Defendants, including Inuvo, conspiracy to disparage, to defame, to infringe trade name and to tortiously

interfere.

## Inuvo's Motion to Dismiss

Inuvo argues that the claim for defamation is untimely because the one-year statute of limitations[2] bars a claim for defamation that occurred in April 2008, more than a year before Tax Masters filed this action on July 24, 2009. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142-43 (5th Cir. 2007)(an "*Erie* guess" that the Texas Supreme Court would hold that the single publication rule[3] applies to information widely available on the Internet and that the one-year statute of limitations begins to run when publication of a libelous statement is complete, i.e., the date of mass distribution of copies of printed matter; on the Internet it would begin to run on the first day the publication is posted.). Furthermore, while the statute of limitations for tortious interference and business disparagement is usually two years, Tex. Civ. Prac. & Rem. Code § 16.003, when the gravamen of those tort claims is defamatory injury to the plaintiff's reputation and there is no evidence of direct pecuniary loss to give rise to special damages, a one-year statute applies. *Nationwide Bi-Weekly Admin.,* 512 F.3d at 146-47; *Hamad v. Center*

---

[2] Tex. Civ. Prac. & Rem. Code § 16.002(a).

[3] The single publication rule holds that the limitations period for libel begins to run when publication of a libelous statement is complete, i.e., the date of mass distribution of copies of printed matter. *Id.*, 512 F.3d at 142.

*for Jewish Community Studies*, 265 Fed. Appx. 414, 417 (5th Cir. 2008). Inuvo further argues that because the underlying torts of defamation, business disparagement and tortious interference are time-barred, the Court should also dismiss the conspiracy claim.

In addition to untimely pleading, Inuvo argues that Plaintiff alleges no facts to support its conspiracy cause of action against Inuvo, no less the underlying tort claims on which it depends.[4]

Third, Inuvo argues that Plaintiff, as a business organization, lacks standing to bring a defamation claim, which must be brought by the owner of the business and not by the business organization. *General Motors Acceptance Corp. v. Howard*, 487 S.W. 2d 708, 712 (Tex. 1972); *Langston v. Eagle Publ'g*, 719 S.W. 2d 612, 618 (Tex. App.–Waco 1986, writ denied).

Finally Inuvo requests a dismissal with prejudice and urges the Court not to allow Plaintiff to replead. It insists Plaintiff's claims "border on the frivolous," are "facially untimely," and do not allege wrongful conduct by Inuvo. Plaintiff lacks standing, it has not repled despite previous representations that it would, it has failed to serve or identify the Doe Defendants, and it has failed to serve the main Defendant, Matt Connelly.

---

[4] Inuvo notes that Plaintiff has not alleged conspiracy to commit trade name infringement.

-8-

**Tax Masters' Response**

Tax Masters asserts that its conspiracy claim against Inuvo is not grounded in the defamation or business disparagement allegations raised against Connelly. Instead the conspiracy claim arises out of an agreement with Connelly to undertake a course of dealing so as to mislead the public by fraudulent statements ad divert customers of Tax Masters to other tax service providers. In other words it "seeks an appropriate remedy to the extent Inuvo provided services to Defendant Connelly that were designed to 'misdirect' Tax Masters' customers and forward their inquiries to a competitors's site. It may be that the content included defamatory statements as a strategy for increasing consumer traffic, but that is not the crux of the claim at Inuvo." #22 at 2.

Tax Masters explains that up to this point it has been trying to locate Connelly so that all the major parties come before the Court, instead of spending time and money to pursue Inuvo alone and then having to duplicate the expense and court involvement once Connelly is added as a party. Therefore it has not participated in significant discovery.

As for insufficient pleading, Tax Masters argues that the current Petition was filed in Texas state court, which requires less specificity in pleading than federal court. Moreover Tax Masters is not alleging that Inuvo is responsible for any

disparagement, but instead that it provided services to Connelly
that were designed to "misdirect" Tax Masters' customers and
forward their inquiries to competitors' sites.  Tax Masters states
that if the Court requires greater specificity, it is prepared to
amend its pleadings.

### Court's Decision

From Inuvo's response, the Court concludes that the claim
against Inuvo appears to be participation in a conspiracy to
tortiously interfere with prospective contracts, but that
conspiracy may or may not also include as objectives to disparage
business, to defame, or to infringe trade name.  Tax Master needs
to define the nature and the scope of the alleged
conspiracy/conspiracies.  The Court agrees with Inuvo that Tax
Masters has not satisfied the plausible factual pleading required
under *Twombly* and progeny for any of its causes of action.

The elements of a civil conspiracy claim under Texas law are
(1) two or more persons, (2) an object to be accomplished, (3) a
meeting of the minds on the object or course of action, (4) one or
more unlawful, overt acts, and (5) damages as the proximate
result." *Massey v. Armco Steel Co.*, 652 S.W. 2d 932, 934 (Tex.
1983).  The plaintiff must allege facts showing and ultimately
prove that the defendants conspired to accomplish an unlawful
purpose or used unlawful means to accomplish a lawful purpose.
*Juhl v. Airington*, 936 S.W. 2d 640. 644 (Tex. 1996).  It is not the

agreement itself, but an injury to the plaintiff resulting from the underlying tort that gives rise to a cause of action for civil conspiracy, *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W. 2d 922, 925 (Tex. 1979); *Tilton v. Marshall*, 925 S.W. 2d 672, 681 (Tex. 1996). Since conspiracy is a derivative tort, the plaintiff must plead facts supporting a claim that at least one the defendants is also liable for an underlying tort. *Baty v. ProTech Ins. Agency*, 63 S.W. 3d 841, 864 (Tex. App.--Houston [14[th] Dist.] 2002, pet. denied); *Tilton*, 925 S.W. 2d at 681. "[C]ivil conspiracy 'came to be used to extend liability in tort . . . beyond the active wrongdoer to those who have merely planned, assisted, or encouraged his acts.'" *Carroll v. Timmers Chevrolet*, 592 S.W. 2d 922, 925-26 (Tex. 1979), *quoting* W. Prosser, *Handbook of the Law of Torts* § 46, at 293 (1971). "Once a conspiracy is proven, each co-conspirator 'is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.'" *Carroll*, 592 S.W. 2d at 926, *quoting State v. Standard Oil Co.*, 130 Tex. 313, 329, 107 S.W. 2d 550, 559 (1937). Thus to state a claim against Inuvo for conspiracy that includes one or more of the underlying torts, Plaintiff must, but has failed to, provide sufficient facts against the conspirators to make the underlying tort(s) as well as the conspiracy plausible. Plaintiff must satisfy the elements for each cause of action with some factual support.

To plead a claim for business disparagement a plaintiff must

allege that (1) the defendant published a false, defamatory statement of fact about the plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. For special damages, the plaintiff must show that the disparaging communication payed a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade or loss of other dealings. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W. 2d 762, 767 (Tex. 1987); *see also Restatement (Second) of Torts* § 632(a) & cmt. b (1977).

Under Texas law, to state a claim for defamation a plaintiff must allege that (1) the defendant published a statement concerning the plaintiff; (2) the statement was defamatory; (3) while acting with actual malice if the plaintiff was a public official or a public figure, or while acting with negligence if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W. 2d 568, 571 (Tex. 1998); *Klentzman v. Brady*, ___ S.W. 3d ___, No. 01-07-00520-CV, 2009 WL 5174369, *6-7 (Tex. App.--Houston [1st Dist.] Dec. 31, 2009).

The language of the libel statute, Tex. Civ. Prac. & Rem. Code Ann. § 73.001, and in its materially similar predecessor, Article 5430 V.A.C.S., precludes its application to a business; nevertheless a corporation, as distinct from its business, can be libeled, but the defamation is of the owner and not of the

business.  *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W. 2d 890, 893 (1960), *citing Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W. 2d 197 (1943).  *See also Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325, 1328 n.3 (5th Cir. 1993), *citing Brown v. Petrolite*, 965 F.2d 38, 43 n.5 (5th Cir. 1992), and *General Motors Acceptance Corp. v. Howard*, 487 S.W. 2d 708, 712 (Tex. 1972).  The individual owner need not be named "if those who knew and were acquainted with the plaintiff understand from reading the publication."  *Matthews*, 337 S.W. 2d at 289-90; *Henriquez v. Cemex Management*, 177 S.W. 3d 241, 252 (Tex. App.--Houston [1[st] Dist.] 2005, pet. denied); *Kaufman v. Islamic Soc. of Arlington*, 291 S.W. 3d 130, 145 (Tex. App.--Fort Worth 2009, pet. denied). "[T]he asserted libel must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Matthews*, 339 S.W. 3d at 893.  Whether a publication is capable of being defamatory is initially a question of law for the court to determine.  *Turner v. KTRK Televison, Inc.*, 38 S.W. 3d 103, 114 (Tex. 2000).

In *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W. 2d 762, 766 (Tex. 1987), *citing Restatement (Second) of Torts* § 623A, comment g, the Texas Supreme Court distinguished the torts of business disparagement and defamation.  An action for defamation protects the personal reputation of the injured party, while one for business disparagement or "injurious falsehood" protects the

-13-

economic interests of the injured party against pecuniary loss. *Id.* Common law defamation presumed the defamatory statement to be false, with an affirmative defense of truth available to the defendant, while the plaintiff asserting a claim of business disparagement must plead and prove the falsity of the statement. *Id.* A defendant in a defamation case is held strictly liable for his false statement in contrast to a defendant in a business disparagement case who can be found liable "'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere with the economic interest of the plaintiff with an unprivileged fashion.'"  *Id.* Special damages need to be proven in only a limited number of circumstances for common law defamation, but pecuniary loss must always be proven in an action for business disparagement. *Id.* at 766-67.  Tax Master must clarify whether it asserts one or both torts and provide appropriate factual support.

A trade name is a designation adopted and used by a person to indicate a good that he markets or a service that he provides or a business that he conducts. *Thompson v. Thompson Air Conditioning and Heating, Inc.*, 884 S.W. 2d 555, 558 (Tex. App.--Texarkana 1994), *citing Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing and Heating Co.*, 695 S.W. 2d 75, 78 (Tex. App.--San Antonio 1985, no writ).  Moreover a trade name constitutes property and represents the good will that has been built by the efforts, time and money of

the user of the mark.  *Id., citing Hanover Mfg. Co. v. Ed Hanover Trailers, Inc.*, 434S.W. 2d 109, 111 (Tex. 1968); *Jud Plumbing*, 695 S.W. 2d at 78.  To plead a claim for trade name infringement, a plaintiff must allege that the name it seeks to protect is eligible for protection; (2) that it is the senior user of the name; and (3) that there is a likelihood of confusion between its mark and that of the other user.  *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W. 2d 45, 47 (Tex. App.--Houston [14th Dist.] 1992, no writ), *citing Union National Bank, Laredo v. Union National Bank, Austin*, 909 F.2d 839, 844 (5th Cir. 1999).  To show that a mark is eligible for protection, plaintiff must demonstrate its "classification," i.e., that it is a suggestive term, an arbitrary or fanciful term, or a descriptive term that has acquired a secondary meaning.  *Id., citing Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983)(full discussion of trademark classification), *abrogated in part, KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)(some possibility of consumer confusion about the origins of goods or services affected was compatible with fair use of a mark).  If it is an arbitrary use, the plaintiff does not have to show proof of secondary meaning, but if it is a descriptive geographical term, the plaintiff must prove the goods or services have acquired a secondary meaning.  *Id.* at 48, *citing id.* at 791, 793-94.  To meet the substantial burden of proving that the name has acquired secondary meaning, the plaintiff must show by

direct or circumstantial evidence (e.g., evidence of amount and manner of advertising, volume of sales, length and manner of use) that the name denotes to the consumer a single thing coming from a single source, i.e, the link in the minds of consumers between product and source. *Id., citing id.* at 794-95. Whether a trade name has been established is usually a question for the jury. *Id.* Proof of actual confusion is not required, but actual confusion is strong evidence that a likelihood of confusion exists. *Id.* Courts consider a number of factors in determining the likelihood of confusion: (1) type of trademark; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; and (7) actual confusion. *Id.* at 49, *citing Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1159 (5th Cir. 1982). A finding of likelihood of confusion, also a question of fact for the jury, does not have to be supported by a majority of these factors. *Id.* A trademark infringement action under Texas law has the same issues as a federal trademark infringement action. *Id., citing Waples-Platter Companies v. General Foods Corp.*, 439 F. Supp. 551, 583 (N.D. Tex. 1977).

The elements of a cause of action for tortious interference with a prospective contract are (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or

unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's action prevented the relationship from occurring. *Bradford v. Vento*, 48 S.W. 3d 749, 757 (Tex. 2001).

Aside from insufficient pleading of the claims, Inuvo has also argued that because some of the tort claims are time-barred, so is the derivative conspiracy claim. This Court disagrees. Texas provides an independent statute of limitations for civil conspiracy. Tex. Civ. Prac. Rem. Code § 16.003. Even if the one-year statute of limitations on the underlying tort has run, such as for defamation, business disparagement or tortious interference with prospective contracts,[5] "as long as Plaintiff timely filed his conspiracy claim, the remedy for it is unscathed and the extant liability of an underlying defamation claim supports it regardless of a remedy for that underlying claim." *Chevalier v. Animal*

---

[5] The Court notes trademark or trade name infringement is a continuing tort involving wrongful conduct that is repeated over a period of time; "each day creates a separate cause of action" and begins the running of the statute of limitations again. *Horseshoe Bay Resort Sales Co. v, Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W. 3d 799, 812-13 (Tex. App.--Austin 2001, pet. denied). Thus there is no limitations problem with this cause of action as asserted here.

*Rehabilitation Center, Inc.*, 839 F. Supp. 1224 (N.D. Tex. 1993).
The Texas Supreme Court explains the distinction on the grounds
that statutes of limitations are procedural in contrast to
substantive rights:

> Limitations is unlike other defenses that may be
> asserted. . . . . The limitations defense does not
> challenge the merits of the . . . underlying cause of
> action, as do contributory negligence, interspousal
> immunity, governmental immunity, the fellow servant rule,
> the Guest Statute, or any other defenses (whether
> currently existing or not) that we historically have
> recognized as a bar. Limitations denies a right to
> recovery, but does not extinguish substantive rights.
> *See, e.g., City of Dallas v. Ethridge*, 152 Tex. 9, 253
> S.W. 2d 640, 643 (1953)("statutes of limitations do not
> affect the substantive rights of parties; they merely bar
> the remedy by which one party seeks to enforce his
> substantive rights.").

*Id.* at 1232-22, *quoting Russell v. Ingersoll-Rand Co.*, 841 S.W. 2d
343, 359 (Tex. 1992)(Gammage, J., concurring and dissenting). *See
also* 15A C.J.S. Conspiracy § 25 ("Time to Sue and limitations")
(Database updated May 2010)("A particular jurisdiction may provide
an independent statute of limitations for a civil conspiracy. As
long as a plaintiff timely files a conspiracy claim, the remedy for
it is unscathed. The extant liability of the underlying claim
supports the conspiracy claim regardless of the fate of a remedy
for the underlying claim. Since the statute of limitations is
considered to be merely a bar to recovery, rather than a
substantive defense attacking the merits of the case, the wrongful
act still exists, and consequently, the underlying bad act can
support a conspiracy claim even where the limitations period has

run on that act.")(citing *Chevalier*).

While Plaintiff states that it has been preoccupied trying to find various Defendants, it has not requested that the suit be stayed.  This action has been pending for a year and approximately ten months in federal court with its more demanding pleading requirements.  Accordingly the Court

ORDERS that Inuvo's motion to dismiss is currently DENIED, but may be reurged if appropriate after Tax Masters amends its action. The Court further

ORDERS that Tax Masters shall file within twenty days an amended complaint that satisfies Rule 12(b)(6) and *Twombly*.

**SIGNED** at Houston, Texas, this 3rd  day of August   , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE